UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

HEATHER AGUILERA FORSTER,

     *Plaintiff*,

v.                                                  **Case No. SA-21-cv-00765-JKP-RBF**

BEXAR COUNTY et al.,

     *Defendants*.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are motions to dismiss filed by Defendants Jesse Saldana (ECF No. 9) and the City of San Antonio (ECF No. 10). With the filing of the response (ECF No. 12) and replies (ECF Nos. 14, 15) the motions are ripe for ruling. For the reasons set forth below, the Court grants the motions.

## I. BACKGROUND

This case concerns the arrest and detention of Heather Aguilera Forster during which she was in a mental health crisis and required ongoing mental health care. The complaint brings claims against San Antonio Police Officer Jesse Saldana for deliberate indifference to Saldana's serious medical need by failing to follow San Antonio Police Department policies "that were created to protect mentally ill persons." ECF Nos. 1 at 31; 12 at 6. And claims against the City of San Antonio for deliberate indifference and failure to train Saldana in the aforementioned policies. ECF Nos. 1 ¶ 118; 12 at 7.

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every

pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a plaintiff need not plead the legal basis for a claim, the plaintiff must allege "simply, concisely, and directly events" that are sufficient to inform the defendants of the "factual basis" of a claim. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8. Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged in a pleading must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). In the context of a motion to dismiss, plaintiffs carry this burden when their operative pleading alleges that (1) "defendants committed a constitutional violation under current law" and (2) "the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).

While "formulaic recitations or bare-bones allegations will not survive a motion to dismiss," *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019), compliance with *Iqbal* and *Twombly* requires only that the *facts* plausibly allege a constitutional violation. And the Court views the actions of a defendant for objective unreasonableness as alleged in the operative pleading, not as it would on summary judgment. As the Supreme Court recognized long ago,

3

the legally relevant factors bearing upon the [qualified immunity] question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness." On summary judgment, however, the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry.

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original) (citation omitted); *accord McClendon*, 305 F.3d at 323. Naturally, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

## III. APPLICABLE LAW

**A. 42 U.S.C. § 1983**

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc). Accordingly, for a § 1983 claim to survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (quoting the same to "state a claim under § 1983").

## IV. DISCUSSION

Because Forster had not been convicted of the crimes for which she was in custody, her federal constitutional rights were protected under the Fourteenth Amendment. The Fourteenth Amendment guarantees persons in custody a right not to have officials disregard excessive risks to their safety, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), and "not to have their serious medical needs met with deliberate indifference on the part of the confining officials," *Dyer v. Houston*, 955 F.3d 501, 506 (5th Cir. 2020). *See City of Revere v. Massachusetts Gen. Hospital*, 463 U.S. 239, 244 (1983) (the "due process rights" of an unconvicted person "are at least as great as the Eighth Amendment protections available to a convicted prisoner").

Forster contends that her complaint sufficiently alleges claims against Officer Saldana for deliberate indifference and against the City of San Antonio for failure to train and for deliberate indifference under episodic act or omissions and conditions of confinement theories. ECF No. 12 at 8-13.

### A. Officer Saldana

An allegation of deliberate indifference must show (1) the plaintiff's "exposure to a substantial risk of serious harm" and (2) the official's "deliberate indifference to that risk." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Liability will not stand "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[1] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Subjective awareness may be found upon the official's actual

---

[1] The same applies to unconvicted persons including pretrial detainees and persons in police custody. *See City of Revere*, 463 U.S. at 244.

awareness or where a risk is "obvious." *Id.*, at 842. With respect to deliberate indifference to a serious medical need, an inadvertent failure to provide adequate medical care, negligence, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, are all insufficient to constitute deliberate indifference. *See Estelle*, 429 U.S. at 105-07. Deliberate indifference requires a showing that officials refused treatment, ignored complaints, intentionally treated a person incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Domino*, 239 F.3d at 756.

The complaint alleges that Forster has a history of bipolar disorder, which was "known and/or available to Defendants." ECF No. 1, Compl. ¶¶ 23-48. On or about October 31, 2020, Forster experienced a mental health crisis during which she "grabbed and frightened" her mother. Police were dispatched to the home for a "mental health disturbance in progress" by a caller who stated that "a female is having a mental breakdown." Police arrived at the home, including Officer Jesse Saldana. As reproduced in the complaint, Saldana's Incident Report states:

> I made the location and observed the entire driveway full of items that were thrown around and broken. I could hear S-1 [Heather] screaming at my cover officer, J. Diaz # 844, in the kitchen. I walked through the garage and into the kitchen, where I attempted to de-escalate S-1 [Heather]. S-1 [Heather] was very agitated, and she would calm down then all of a sudden start screaming again. There were times where she would scream so loud and talk fast I could not understand what she was saying. I had contact with S-1 [Heather] the week prior. S-1 [Heather] stated to me she is diagnosed with Bipolar and other mental illnesses. It is unclear if S-1 [Heather] is taking her medications.

Compl. ¶ 115 (alterations in complaint).

Forster's mother begged Officer Saldana to send Forster to the hospital instead of jail. Officer Saldana told Forster's mother that the medical facility at Bexar County Detention Center (BCDC) would treat Forster following her arrest. Police officers, including Saldana, placed Forster in handcuffs and leg shackles, dragged her down the driveway, and transported her to BCDC to be

booked for "injury to an elderly person" and "assault contact non-family." The arresting officer reported that Forster was suicidal. Compl. ¶¶ 26-28.

Forster contends that Saldana failed to follow a San Antonio Police Department policy, which was created to protect mentally ill arrestees, and that his failure to follow the policy's guidelines is evidence of his deliberate indifference to a serious risk of harm to Forster. Compl. ¶ 116. Plaintiff's complaint belies her contentions. Forster alleges that Saldana failed to carefully evaluate individuals involved in a mental health crisis and determine the best course of action to take in order to resolve the situation; recognize symptoms which may indicate the existence of mental illness; determine the best course of action to be taken, including the need for emergency medical services or warrantless emergency detention; and transport any medication being taken by the individual and release that medication to appropriate medical or detention personnel. Compl. ¶ 116.

Saldana's Incident Report, as reproduced in the complaint, reflects that he was aware that Forster had been diagnosed with mental illnesses and that he observed her behavior as erratic. The complaint shows that Saldana believed that BCDC would provide medical care to Forster after she was booked. There are no facts from which the Court could reasonably infer that Saldana knew that taking Forster to be booked at BCDC presented a substantial risk of serious harm to her. Nor does the complaint show that Saldana's decision to arrest Forster and take her to BCDC stemmed from a wanton disregard for her safety or a subjective intent to cause her harm. Indeed, the policy gives an officer discretion to determine the best course of action to take in order to resolve the situation including the need for emergency medical services or warrantless emergency detention. Compl. ¶ 116.

Because the complaint does not adequately allege either a constitutional violation of

Forster's Fourteenth Amendment right to not have her serious medical needs met with deliberate indifference or a violation of her right as a person in custody to be protected from substantial risks of serious harm, the claims against Officer Saldana are subject to dismissal.

**B. City of San Antonio**

A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("local governments are responsible only for their own illegal acts").

**1. Constitutional Violation**

To state a claim arising from the execution of an entity's policy or custom, a plaintiff must set forth factual allegations to show (1) a policymaker; (2) the policy or custom; and (3) a violation of constitutional rights whose moving force is the policy or custom. *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.,* 237 F.3d 567, 578 (5th Cir. 2001)) *accord Blanchard-Daigle v. Geers*, 802 F. App'x 113, 116 (5th Cir. 2020) (per curiam) (citing *Monell*, 436 U.S. at 694).

**a. Policymaker**

A plaintiff must plead sufficient facts to show that "an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow*, 614 F.3d at 167. A policymaker is a person or entity "who has 'the responsibility for making law or setting policy in any given area of a local government's

business.'" *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law. *Id.* (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 482 (1986)).

 The complaint does not identify a specific policymaker responsible for the policy which caused the alleged constitutional violation but the complaint could be read to allege that the City of San Antonio is the policymaker. Compl. ¶¶ 12-14. As previously explained in this Division:

> the City of San Antonio does not qualify as a "policymaker" under the standard articulated by the Fifth Circuit. The city itself does not set policy for the police department. As a general matter, the city council sets policies for the city. *See* San Antonio City Charter, art. I § 2 ("all powers of the city shall be vested in an elective council ... which shall enact local legislation and determine policies."). Furthermore, the police department is under the control of the city manager. *Id.,* art. v. § 50(4).

*Mathews v. City of San Antonio*, No. SA:14-CV-566-DAE, 2014 WL 7019984, at *4 (W.D. Tex. Dec. 11, 2014) (citing *Bolton v. City of Dall.,* 541 F.3d 545, 550–51 (5th Cir. 2008) (looking in part to the city charter of Dallas to determine which persons or entities held policymaking power over the police department).

 Identifying a municipal policymaker who could be held responsible under § 1983 "is not an opaque requirement." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Plaintiff's failure to identify any specific policymaker other than the City of San Antonio itself, is therefore fatal to Plaintiff's municipal liability claim. *See, e.g. Vasquez v. Jalomo*, No. 5:18-CV-53, 2020 WL 10051757, at *7 (S.D. Tex. Jan. 15, 2020) ("Plaintiff's failure to identify a policymaker is fatal to his municipal liability claim"); *Pivonka v. Collins,* No. 3:02–CV–742–G, 2002 WL 1477455, at *4 (N.D. Tex. July 5, 2002) (in which the plaintiffs' failure to plead specific facts on the policymaker element of their § 1983 claim rendered the plaintiffs' complaint defective

and finding that "there is abundant case law in this circuit that a plaintiff must identify a policymaker in a § 1983 action against a municipality").

**b. Policy**

> A policy may be evidenced by a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.

*Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021) (per curiam) (internal quotations omitted) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))).

By extensively quoting and referencing San Antonio Police Department General Manual, Procedure 611, the complaint sufficiently identifies the policy at issue in this case. Compl. ¶ 116.

**c. Constitutional Violation**

As discussed above, Forster failed to allege a constitutional violation of deliberate indifference to a serious medical need or to a substantial risk of serious harm based on the acts or omissions of Officer Saldana on the day in question. "To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff [first] must establish that he possessed a constitutional right of which he was deprived." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). "Where there is no underlying constitutional violation, there can be no municipal liability." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

As to Forster's conditions of confinement claim against the City of San Antonio, the allegations in the complaint detail the conditions at BCDC. Forster does not allege any unconstitutional condition of confinement during her arrest or transport to BCDC—the activities that implicate the City. Thus, Forster's deliberate indifference claim against the City under both

10

episodic act or omission and conditions of confinement theories is subject to dismissal.

**2. Failure to Train**

"To state a cognizable failure-to-train claim, a plaintiff must plead facts plausibly demonstrating that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violations in question." *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021) (per curiam) (citing *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753 (5th Cir. 2009). A failure to train claim "must identify the policy, connect the policy to the city itself[,] and show that the particular injury was incurred because of the execution of that policy." *Vega v. Cameron Cty., Texas*, 856 F. App'x 532, 533 (5th Cir. 2021) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc) (citing *Lee v. Morial*, No. 01-30875, 2002 WL 971519, at *4 (5th Cir. 2002))). A plaintiff demonstrates deliberate indifference with facts that show the municipality had actual or constructive notice of a pattern of similar constitutional violations caused by the policy. *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011). Thus, a plaintiff satisfies the deliberate indifference prong by demonstrating (1) a pattern of violations and (2) that the inadequacy of the training is obvious and obviously likely to result in the constitutional violation. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Forester's failure to train claim fails because the complaint does not allege facts that show or allow the reasonable inference that the City's training procedures were inadequate. The policy at issue instructs officers to carefully evaluate individuals involved in a mental health crisis and recognize symptoms which may indicate the existence of mental illness. Saldana's report indicates he was aware that Forster was in a crisis because he noted that items were strewn about the

driveway, that she was very agitated, and when he spoke to her, her speech pattern was erratic. While speaking with Forster's mother, he was also hearing Forster scream at his cover officer— and so, he attempted to de-escalate Forster. Saldana's report acknowledges that he had previous contact with Forster, that she told him about her mental health diagnoses, and that it was unclear if Forster was taking her medications. These facts do not show or allow the reasonable inference that Saldana was inadequately trained. Rather, the report shows Saldana evaluated Forster, recognized symptoms indicating the existence of mental illness, and responded appropriately by attempting to de-escalate. The allegations also do not indicate that Saldana acted contrary to the policy when he decided to arrest and transport Forster to BCDC. Indeed, the policy allows an officer discretion when deciding whether to arrest and transport to a detention center or seek a warrantless emergency detention. *See* Compl. ¶ 116. Additionally, the complaint contains no facts that show any pattern of violations. For these reasons, the failure to train claim is subject to dismissal.

**C. Leave to Amend**

When a pleading fails to state a claim, a court should "freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2). However, dismissal with prejudice is appropriate if a court finds the pleader presented its "best case." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). And leave to amend need not be granted when doing so would be futile—that is, when the amended pleading "would not withstand a motion to dismiss for failure to state a claim." *Life Partners Creditors' Tr. v. Cowley*, 926 F.3d 103, 125 (5th Cir. 2019) (alteration omitted).

The Court has not previously granted Plaintiff leave to amend after apprising her of deficiencies in her pleading but after careful review of the complaint and the briefing, the Court finds that granting leave to amend would be futile. The Fifth Circuit has made clear that the

federal pleading requirements are intended to bar groundless claims as a pretext for a fishing expedition to discover unknown wrongs. *See Flagg v. Stryker Corp.*, 647 Fed. App'x 314, 318 (5th Cir. 2016) ("*Twombly* and *Iqbal* were designed to avoid subjecting defendants to lengthy and expensive discovery when the plaintiff is merely on a fishing expedition."). At present, the only support for Plaintiffs alleged theory that the City of San Antonio has failed to train its officers was Saldana's arrest and transport of Forster to BCDC and the Court has concluded that Saldana's conduct did not violate Forster's constitutional rights.

Forster contends that in the absence of training records from the City of San Antonio and San Antonio Police Department, it is unclear whether the city had an adequate training program in relation to the tasks officers must perform relative to mentally ill persons and without Saldana's personnel file, it is unknown whether he attended and received the required training on handling mentally ill persons in accordance with San Antonio Police Department policies and that limited discovery in this regard will allow her to adequately allege her claims. Although it is not necessary for Forster to have all the evidence necessary to prove her claims at this stage, to survive dismissal, she must have some specific facts that demonstrate that Saldana was not adequately trained and that such failure was causally related to Forster's injuries. Otherwise, the Court has no basis to make a "plausible inference" in Forster's favor. The Court cannot conceive any additional facts that would change its analysis—as alleged, Saldana's conduct in arresting and transporting Forster comported with the City's policy as recited in the complaint. Accordingly, Plaintiff's request for leave to amend her pleadings as to Defendants Jesse Saldana and the City of San Antonio is denied.

## VI. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the motions to dismiss filed by

Defendants Jesse Saldana (ECF No. 9) and the City of San Antonio (ECF No. 10). **The Clerk of**

**Court is directed to terminate Jesse Saldana and the City of San Antonio from this case.**

**It is so ORDERED this 25th day of October 2021.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**

14